WILLIAM B. HAYES

*v.*

EDWIN S. HOUSTON.

1. NEW TRIAL — *finding from evidence.* A new trial will not be granted on the ground that the verdict of the jury is against the evidence, where the testimony is conflicting, if there is enough proved to sustain the finding, the jury having the advantage of this court in seeing the witnesses and noticing their demeanor on the stand.

2. SAME — *newly discovered evidence.* When the newly discovered evidence, if introduced, could not have changed the verdict of the jury, a new trial will not be granted.

APPEAL from the Circuit Court of Cook County; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellant.

Mr. JOHN J. KNICKERBOCKER, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was case, in trover, for a diamond ring, brought to the Cook circuit court by Edwin S. Houston, plaintiff, and against William B. Hayes, defendant, which resulted in a verdict and judgment for the plaintiff; and the defendant appeals.

The point chiefly relied on by appellant is, that the verdict is against the evidence. There was some conflict in the testimony, which the jury have considered with the advantage which this court has not, of seeing the witnesses and noticing their demeanor on the stand. To our minds the evidence discloses a transaction akin to the confidence game, in which appellant and his principal witnesses, Langley and Wolf, were the chief actors. The plaintiff, a young lieutenant in the navy of the United States, was proceeding from San Francisco, where he was stationed, by way of Chicago to the city of New York, and called at No. 40, Bryan Block, to see a gentleman to whom he had a letter of introduction. This was on the day of his arrival in Chicago, and was about August 18, 1874. He wore upon a finger of his hand a brilliant — a diamond of about three and one-half *carats*, set in a plain, heavy gold ring. It had a feather or speck under one of the faces. Appellant, with others, was in the room when the appellee first entered, examining some diamonds. Inquiring for the party to whom he had the letter, he was informed he did not occupy those rooms any more. The conversation at last turned upon diamonds — provoked, perhaps, by the brilliant on appellee's finger, which appellant had observed, and the luster of which he admired.

Appellant said he dealt in diamonds, and offered appellee $200 and a city lot he owned for the ring.

After some conversation on the subject, appellee agreed to take for the diamond $250 and the city lot, which the jury had a right, from the testimony, to believe was put in at the value of $1,000, for which a statutory deed was made to appellee by one Silver and wife. · Appellee had no opportunity to examine the lot, but relied wholly upon the representations of appellant as to value. He soon found out, after the deed was recorded and he had parted with his brilliant, that the lot was worthless, being but five feet by ten, and fourteen miles south of the Court House Square.

On appellee's return to his station in California, under orders for that purpose, he was enabled to spend part of a day in Chicago, which was on December 4, 1874, and, with a friend, sought an interview with appellant in regard to the transaction, which was had, but proved fruitless. In this interview it is testified on one side, and denied on the other, that appellee demanded a return of the diamond, at the same time offering to return the money he had received and the lot. The jury have settled this point in appellee's favor, and we think there was proof sufficient to justify such finding, and that the offer of appellee was sufficient under the circumstances.

We are, upon the whole record, well satisfied here was a glaring fraud on the part of appellant, and helped on by confederates, probably, some of whom were examined as witnesses. The whole case shows to what base means some men will resort to obtain money or valuables. Appellant knew, when he was selling the lot, it was of no value, and so stated after the transaction was completed. Appellee was, from his position, unacquainted with city lots, and had to rely upon representations of one having the appearance of a gentleman, and who was treated as such, apparently, by persons in the street. Like many others, appellee having invested the proceeds of a long cruise in this diamond, purchased at Rio de Janeiro, he desired to make a more

permanent investment in real estate in that great city of ours, which has justly become one of the wonders of the world, and he was assured by appellant he had made a good thing by this purchase, and further assured, if at any time he desired to part with the lot, he would offer $1,000 for it.

There is controversy about the intrinsic value of the diamond, but in the trade it was valued at $1,150. The verdict of the jury, with the amount of money paid by appellant, does not quite equal that amount. We perceive no objection to the instructions.

As to the newly discovered evidence, the reading of the affidavit of Fanam, it is apparent it would not have influenced the jury to find a different verdict. The facts in evidence, appellant's giving the initials "J. L.," Chicago, as his address, his whole conduct in this transaction, would have nullified any such statement as is set up in Fanam's affidavit. The story there told does not seem at all probable. We think justice has been done, and affirm the judgment.

*Judgment affirmed.*